IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ILLUSTRO SYSTEMS | § | |
| INTERNATIONAL, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-1969-L |
| | § | |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORPORATION and IBM | § | |
| NEDERLAND N.V., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant International Business Machines Corporation's Motion to Dismiss, filed December 11, 2006; and Defendant IBM Nederland B.V.'s Motion to Dismiss, filed December 11, 2006. After careful consideration of the motions, responses, replies, evidence, and applicable authority, the court **grants in part and denies in part** Defendant International Business Machines Corporation's Motion to Dismiss and **denies** Defendant IBM Nederland B.V.'s Motion to Dismiss.

## I.     Procedural and Factual Background

Plaintiff Illustro Systems International, Inc. ("Plaintiff" or "Illustro")[1] asserts claims against Defendants International Business Machines Corporation ("IBM") and IBM Nederland B.V. ("IBM Netherlands") for breach of contract, copyright infringement, and unjust enrichment. Illustro seeks

---

[1]Plaintiff Illustro referred to itself as "Illustro" throughout its complaint, but in its responses to the motions to dismiss, consistently refers to itself as "illustro." The court will use the capitalized "Illustro."

**Memorandum Opinion and Order – Page 1**

damages caused by Defendants' alleged use of certain software on computers owned and operated by IBM Netherlands.

Plaintiff alleges that it is the owner of certain copyrighted software, described variously in the Complaint as "Enterprise Web/VM," "Neon," and "z/Web-Server." Compl. ¶ 9. Plaintiff claims that the software is protected through copyright registrations issued in 1996 and 2006. *Id.* ¶ 10. Illustro alleges that IBM Netherlands contacted Neon Systems, Inc., a predecessor-in-interest to Illustro, in 1999, seeking a license for the copyrighted software. *Id.* ¶ 11. Illustro claims that IBM Netherlands represented that the software would be used on two specific computers, and the purchase order reflects the "MIPS" of the identified computers and the pricing was based upon the MIPS of those computers. *Id.* ¶ 12; Ex. D. The court notes that purchase orders attached to the Complaint are dated March 5, 1999 and are printed on IBM Netherlands letterhead. Compl. Ex. D.

Illustro alleges that Defendants and Neon entered into a software license agreement in 1999, and Plaintiff alleges that the licensing agreement provides that IBM agreed to pay upgrade fees if "an IBM organization transferred covered software (including the Copyrighted Software) to a computer of a higher tier in Neon's pricing structure than the originally-licensed software." Compl. ¶¶ 14-15. The court notes that the attached licensing agreement was signed by IBM and Neon and is dated November 22, 1999. Compl. Ex. C, at 8.

Plaintiff contends it has been damaged by Defendants' use of the copyrighted software on computers other than those authorized, without Illustro's consent or authority, and that Defendants have failed to pay Illustro upgrade fees of more than two million dollars and increased maintenance fees. Compl. ¶¶ 16-18. Illustro therefore has brought claims for breach of contract of the licensing

agreement and purchase orders and for copyright infringement, of U.S. and international copyright laws, and for unjust enrichment.

Defendant IBM has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Illustro has failed to state a claim on any of the claims alleged against IBM. Defendant IBM Netherlands has moved to dismiss the complaint pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure, arguing that Illustro failed to properly serve it and that the court lacks personal jurisdiction over IBM Netherlands.

## II.    Legal Standards

### A.    Rule 12(b)(2) – Standard for Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a

compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the

forum state arise from, or are directly related to, the cause of action.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial.  *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies.  *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987).  As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'"  *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277).  In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state."  *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

### B.    Rule 12(b)(5) – Standard for Motion to Dismiss for Insufficient Service

Pursuant to the Federal Rules of Civil Procedure, the court is authorized to dismiss a civil action for insufficiency of service of process.  Fed. R. Civ. P. 12(b)(5); *see also Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir.), *cert. denied*, 513 U.S. 1016 (1994) ("A district court . . . has broad discretion to dismiss an action for ineffective service of process.")  Absent

proper service of process, the court cannot exercise jurisdiction over a party named as a defendant. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 350 (1999).

For service on an international party, Rule 4 of the Federal Rules of Civil Procedure provides that service may be effected "(1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or (2) . . . other means of service, provided that service is reasonably calculated to give notice . . .; or (3) by other means not prohibited by international agreement as may be directed by the court." Fed. R. Civ. P. 4(f). In this circuit, service through the Hague Convention may not be effected by service by mail. *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 384-85 (5th Cir. 2002).

### C.      Rule 12(b)(6) – Standard for Motion for Failure to State a Claim

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling

on such a motion, the court cannot look beyond the pleadings.  *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'"  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff.  *Lowrey*, 117 F.3d at 247.  A court, however, is not to strain to find inferences favorable to the plaintiff and is not to "accept conclusory allegations, unwarranted deductions or legal conclusions."  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim.  *United States ex rel. Riley v. St. Lake's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

## III.   Analysis

### A.   IBM Netherlands' Motion to Dismiss

IBM Netherlands argues that Illustro's complaint should be dismissed because (1) Illustro has failed to properly serve it and (2) the court lacks personal jurisdiction over IBM Netherlands. The court considers first IBM Netherlands' argument that Illustro has failed to allege minimum contacts sufficient to confer personal jurisdiction over IBM Netherlands in this court.

### 1.    Personal Jurisdiction

Illustro's Complaint alleges that the court has jurisdiction over "Defendants based on extensive contacts with Texas and contacts with Illustro and its predecessors in interest in Texas related to the subject matter of this action, including entering into certain contracts at issue in this lawsuit with at least one of Illustro's predecessors based in Texas."  Compl. ¶ 5.  Both IBM Netherlands and Illustro have also provided additional evidence in their briefing on the motion, documents that the court may review in determining whether Illustro has shown a prima facie case of personal jurisdiction over IBM Netherlands.  *Stuart*, 772 F.2d at 1192.

Specifically, with its motion, IBM Netherlands has provided the court with the affidavit of Ronald Stevenaar, its CFO.  Stevenaar Aff. ¶ 2.  Stevenaar states that IBM Netherlands is a separate entity from IBM, and that IBM Netherlands is not registered to do business in Texas; has no officers, directors, or employees living in Texas; has never maintained an office, mailing address, or telephone listing in Texas; has never owned or leased property in Texas; has no assets in Texas; has never had any bank account in Texas; has never paid taxes in Texas; does not advertise in Texas; and does not have a registered agent in Texas.  *Id*. ¶¶ 3-4.  With its response, Illustro has filed the declaration of Eric Vaughan authenticating as business records several documents, including: an asset purchase agreement between Neon and Illustro; the IBM-Neon license agreement; an invoice for maintenance sent to Neon by IBM Netherlands; e-mail correspondence between Illustro and IBM Netherlands; and Illustro's Complaint.  Vaughan Decl. ¶ 3.  Vaughan also describes the process of providing maintenance for software, and states that most of the maintenance work could be performed at Illustro's offices in Texas.  *Id*. ¶¶ 4, 7.

### a.      General Jurisdiction

IBM Netherlands moves to dismiss for lack of personal jurisdiction, and the court looks first to determine if Illustro has alleged facts sufficient to support a finding that the court has general jurisdiction over IBM Netherlands.  The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial.  *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n. 9.  Cases involving general jurisdiction suggest that the threshold contacts required for assertion of such jurisdiction are very substantial.  *See Davis v. Billick,* 2002 WL 1398560, * 3 (N.D. Tex. June 26, 2002) (citing *Helicopteros Nacionales,* 466 U.S. at 416-19) (concluding there was no general jurisdiction where defendant traveled to Texas to negotiate sale of helicopters, regularly purchased helicopters in Texas, and sent pilots for training to Texas).

In its Complaint, Plaintiff has not alleged any facts that typically underlie general jurisdiction, such as property ownership, payment of taxes, frequent travel, regular conduct of business, or maintenance of bank accounts in Texas.  *See generally Middlebrook v. Anderson,* 2005 WL 350578, *3 n.4 (N.D. Tex. Feb. 11, 2005).  Additionally, the Stevenaar affidavit states that IBM Netherlands is not registered to do business in Texas; has no officers, directors, or employees living in Texas; has never maintained an office, mailing address, or telephone listing in Texas; has never owned or leased property in Texas; has no assets in Texas; has never had any bank account in Texas; has never paid taxes in Texas; does not advertise in Texas; and does not have a registered agent in Texas.  Stevenaar Aff. ¶¶ 3-4.  In light of Stevenaar's Declaration, and the failure of Plaintiff to establish a prima facie case of general jurisdiction over IBM Netherlands,  the court determines that

it lacks general jurisdiction over IBM Netherlands.  Accordingly, the court looks next to determine

if Illustro has alleged a prima facie case of specific jurisdiction over IBM Netherlands.

### b.   Specific Jurisdiction

IBM Netherlands argues that neither the IBM-Neon license agreement nor the IBM

Netherlands purchase orders support the court's specific jurisdiction over IBM Netherlands.  Illustro

responds that IBM Netherlands entered into a three-year maintenance contract with Neon, that IBM

Netherlands repeatedly contacted Illustro in Texas, that the license agreement demonstrates IBM

Netherlands' minimum contacts with Texas, and that IBM Netherlands directed intentional tortious

acts at Texas.

### i.   Contracts and Purchase Orders

The court considers first the IBM-Neon license agreement to determine whether the contract

between IBM and Neon, which lists a Texas address on the contract, confers specific jurisdiction

over IBM Netherlands.  As IBM Netherlands argues, it is not a signatory to the agreement; only a

representative of IBM signed the agreement.  Compl. Ex. C, at 8.  Illustro points to the fact that the

definition of "IBM" in the IBM-Neon agreement includes IBM Netherlands: "For purposes of this

Agreement, 'IBM' shall include any related IBM organizations worldwide."  *Id*. at 1.  Without

deciding as a matter of law whether the IBM-Neon license agreement binds IBM Netherlands, the

court considers this evidence in the context of deciding whether the court has personal jurisdiction

over IBM Netherlands.  Regardless of the binding effect of the agreement on IBM Netherlands, IBM

Netherlands did not sign the agreement, and this agreement does not provide any evidence that IBM

Netherlands "purposefully availed" itself of the privilege of doing business in Texas.

Illustro also points to an invoice sent by Illustro to IBM Netherlands, arguing that this contract forms a basis for a finding of specific jurisdiction over IBM Netherlands because it contracted with Illustro to provide maintenance services with Neon over a three-year period. Illustro App. at 34. Illustro also points to e-mail communications between Illustro, a Texas company, and IBM Netherlands regarding the software at issue in this case. *Id.*, at 35-58. In addition, attached to Illustro's complaint are purchase orders showing IBM Netherlands' initial purchase of software from Beyond, a California company.

As the Fifth Circuit Court of Appeals has noted, "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (quoting *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987)). In that decision, the Fifth Circuit Court of Appeals noted that "this Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Id.* (citing *Holt*, 801 F.2d at 778).

A similar result was reached in *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir. 1983). In that case, no personal jurisdiction was found where the nonresident agreed to purchase goods manufactured in Texas, payment was to be made in Texas, the parties engaged in communications before the agreement, nonresident officers of the company visited Texas to close the deal, and the contract was accepted in Texas. *Id.* at 1028-1029. In that case, the court noted that

the nonresident did not regularly engage in business in Texas and that its sole contact with the forum was the single transaction involved in the case. *Id.* at 1029. The court noted that "the exchange of communications . . . in development of the contract, that in itself is also insufficient to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws." *Id.*

Other cases, however, look at factors beyond the mere existence of a contract and consider whether minimum contacts may be found based upon the place of performance of a contract. In another Fifth Circuit case, the court found that minimum contacts existed where "the contract, as evinced by the purchase orders and corresponding invoices, shows that [that contract] was performed in Texas." *Polythane Sys., Inc. v. Marina Ventures Int'l*, 993 F.2d 1201 (5th Cir. 1993), *cert. denied*, 510 U.S. 1116 (1994). "The place where the contract is performed is a weighty consideration in ascertaining whether or not specific jurisdiction is properly exercised." *Id.* at 1205 (internal quotations omitted). In that case, payments were made to Texas offices, and the relationship lasted for three years. *Id.* at 1206. The nonresident also had engaged another Texas corporation to apply the product supplied by and created in Texas. *Id.* The court concluded: "Aggregating the Appellants' contact with Texas, it is clear that their connections were deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable." *Id.* (internal citations and quotations omitted).

Illustro cites to several cases in support of its argument that the court should exercise personal jurisdiction over IBM Netherlands, but the court determines that these cases are distinguishable or inapplicable. In *Irving v. Owens-Corning Fiberglas Corp.*, the court considered personal jurisdiction of the defendant in the context of stream-of-commerce doctrine in a products

liability case.  864 F.2d 383, 385-388 (5th Cir.), *cert. denied*, 493 U.S. 823 (1989).  Two other cases cited by Illustro finding personal jurisdiction from telephone calls or e-mail messages were in the context of tort claims where the calls and e-mails were the basis of the claims.  *Zubarik v. Rubloff Devel. Group, Inc.*, 2006 WL 842368, *3 (N.D. Tex. Mar. 31, 2006); *Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1089 (N.D. Tex. 2003).   While the Supreme Court found minimum contacts in *McGee v. International Life Insurance Company* based upon a contract issued from the forum state, 335 U.S. 220, 221-222 (1957), as IBM Netherlands points out, this result has been construed narrowly by other courts, including the Fifth Circuit.  *Burstein v. State Bar of California*, 693 F.2d 511, 519 (5th Cir. 1982).

The court determines that IBM Netherlands' purchase of three years' maintenance support of the software and e-mail correspondence with Illustro in Texas do not rise to the level of minimum contacts required for a finding of personal jurisdiction.  Although Illustro argues that the place of performance was in Texas, the maintenance agreement was for the maintenance of software running on IBM Netherlands' computers in Europe.  Taken together, these contacts are not enough for the court to determine that IBM Netherlands ever anticipated being haled into court in Texas or that it has "purposefully availed" itself of the privilege of doing business in Texas.

### ii.      Intentional Torts

Illustro also argues that jurisdiction is warranted because IBM Netherlands engaged in intentional tortious activity directed at Texas.  In this regards, the Fifth Circuit has held:

> When a nonresident defendant commits a tort within the state, or an act outside the
> state that causes tortious injury within the state, that tortious conduct amounts to
> sufficient minimum contacts with the state by the defendant to constitutionally
> permit courts within that state, including federal courts, to exercise personal
> adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its
> offenses or quasi-offenses. . . .   Even an act done outside the state that has

consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident's conduct.

*Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628, *reh'g denied*, 199 F.3d 441 (5th Cir. 1999) (internal citations omitted).  Illustro contends that IBM Netherlands' copyright infringement is an intentional tort that warrants jurisdiction because its alleged copyright infringement was tortious activity directed at Texas.  IBM Netherlands contends that Illustro's position would allow for personal jurisdiction over any defendant alleged to have committed any intentional act.

The parties have not briefed this issue extensively, but the court has determined through its research that there is an emerging body of cases considering the issues of whether the "effects" test applies in copyright cases and when the court may exercise personal jurisdiction over a defendant alleged to have committed copyright infringement.  The Fifth Circuit Court of Appeals has not considered the issue raised by the parties directly, and accordingly, the court has reviewed the decisions of other circuit and district courts in reaching its decision.

First, the court must consider IBM Netherlands' argument that the "effects" test cited by Illustro may be properly applied in this case.  As noted above, in *Guidry*, the Fifth Circuit Court of Appeals held that the effects of tortious activity may be considered minimum contacts with a forum. *Id*. at 628.  This circuit has held that copyright claims are tort claims,  *Bangor Punta Operations, Inc. v. Universal Marine Co., Ltd.*, 543 F.2d 1107, 1109 (5th Cir. 1976), but it has not opined on the issue of whether copyright claims are *intentional* torts.  The Fourth and Seventh Circuit Courts of Appeal have held that copyright infringement is an intentional tort. *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 931 (7th Cir. 2003); *Gnossos Music v. Mitken, Inc.*, 653 F.2d 117, 120 (4th Cir. 1981).  District courts within this district have reached differing opinions in unpublished

cases.  A district court in the Western District concluded that copyright infringement is an intentional tort and considered a nonresident's alleged infringement as "intentional, and allegedly tortious, actions . . . expressly aimed at Texas."  *Hartman v. Bago Luma Collections, Inc.*, 2004 WL 1055709, *3 (W.D. Tex. Apr. 27, 2004) (citing *Bucklew*, 329 F.3d at 931) (internal quotations omitted).  On the other hand, this court has previously held that "[a]lleged copyright infringement by a nonparty, however intentional, comes nowhere near the threshold for specific jurisdiction based on an intentional tort."  *Richards Group, Inc. v. Smith*, 2001 WL 123989, *3 (N.D. Tex. Jan. 12, 2001) (Kendall, J.).  The court determines that copyright infringement is an intentional tort.

IBM Netherlands argues that this circuit's application of the "effects" test requires "death or serious physical harm" and only applies to communication-based torts, citing *Guidry*.  The court does not read *Guidry* so narrowly.  The court in *Guidry* noted that the Supreme Court has held that the "effects" test, originally set out in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984), was not intended to be limited to defamation cases.  *Guidry*, 188 F.3d at 629 (citing *Allred v. Moore & Peterson*, 117 F.3d 278, 286-87 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998), and *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985), *cert. denied*, 475 U.S. 1122 (1986)).  While the court in *Allred* concluded that contacts arising out of the intentional act of causing process to be served by mail were insufficient to establish the defendant's minimum contacts, the court quoted the Seventh Circuit Court of Appeals regarding the application of *Calder* to other tort claims:

> The Supreme Court did not intend the *Calder* "effects" test to apply only to libel cases.  However, the "effects" of the intentional tort of libel in the forum state (i.e., the plaintiff's residence) are perhaps more pronounced than the "effects" of most other intentional torts.  Nevertheless, the key to *Calder* is that the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum.  Whether these effects, either alone or in combination with other contacts, are sufficient to support in personam jurisdiction will turn upon the particular facts of each case.

*Allred*, 117 F.3d at 286-87 (quoting *Wallace*, 778 F.2d at 395).  District courts in this circuit have applied the *Calder* "effects" test to copyright infringement claims.  *Isbell v. DM Records, Inc.*, 2004 WL 1243153, *10 (N.D. Tex. June 4, 2004) (Fish, J.) (citing cases).

Accordingly, the court considers IBM Netherlands' contacts with Texas in the context of its contacts related to its alleged copyright infringement.  Illustro has alleged that IBM Netherlands sought to acquire a license for the copyrighted software and that it made representations to Beyond regarding the specific computers that would use the software.  Compl. ¶¶ 11-12.  IBM Netherlands allegedly has "copied, installed, used, executed, and/or displayed the Copyrighted Software on computers other than the Authorized Computers . . . without Illustro's authority or consent."  *Id.* ¶ 16.  The alleged use of the copyrighted software occurred in "multiple countries including the Netherlands, Germany, and England."  *Id.*  ¶ 42.  Illustro has alleged that "Defendants have acted willfully, intentionally, purposefully, and in disregard of and with indifference to Illustro's rights."  *Id.* ¶ 37.  Illustro argues that it has sufficiently alleged that IBM Netherlands "was undoubtedly aware that a Texas party held rights" in the copyrighted software, that it entered into agreements to license the software with Neon, a Texas company, and "knowingly interfer[ed] with [I]llustro's intellectual property rights."  Illustro Resp., at 12.  Illustro has attached an invoice sent to IBM Netherlands from Neon, a Texas company, as well as e-mails sent from IBM Netherlands in the Netherlands to Illustro in Texas.  Illustro App. at 34-58.  IBM Netherlands does not dispute that it knew Illustro was based in Texas.

Although the Fifth Circuit Court of Appeals does not provide guidance on how to consider the effects of alleged copyright infringement in the context of determining personal jurisdiction, several district courts have written on the issue, and the court turns to these as providing persuasive

**Memorandum Opinion and Order – Page 16**

authority.  The cases from district courts in this circuit involve the sale of infringing works, and those courts have looked to the place where infringing products were sold as contacts with the forum state.  In *Isbell*, the Honorable Joe A. Fish concluded that personal jurisdiction was warranted under the *Calder* test where the defendant "aimed its allegedly tortious conduct at Texas," and the defendant licensed the subject music for sale or performance in Texas.  2004 WL 1243153, at *11. In *Johnson v. Tuff N Rumble Management, Inc.*, a district court in Louisiana found minimum contacts in a copyright case where the defendant allegedly contracted with Louisiana radio and TV stations to market the infringing CD.  1999 WL 1201891, *5 (E.D. La. Dec. 15, 1999).  These cases are less helpful to the court, because the alleged copyright infringement at issue here arises from the alleged *use* of the copyrighted software in Europe, and not the *sale* of infringing products considered in *Isbell* and *Johnson*.

Courts in other circuits  have concluded that the *Calder* "effects test is satisfied in a copyright infringement action in which the plaintiff brings suit in the forum where the plaintiff resides, and the defendant knows that the plaintiff resides there." *Goldberg v. Cameron*, __ F. Supp. 2d ___, 2007 WL 641047, *4 (N.D. Cal. Feb. 27, 2007) (citing *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 284 (9th Cir. 1997), *overruled on other grounds by Feltner v. Columbia Pictures Television*, 523 U.S. 340 (1998)).  In that case, however, the court did not find personal jurisdiction and concluded that plaintiff failed to allege that the defendant "targeted . . . a plaintiff whom the defendant knows to be a resident of the forum state." *Id*.  Another district court, applying *Calder*, found the "effects" test satisfied and determined that personal jurisdiction existed where the plaintiff alleged that the defendant used the copyrighted materials and knew that the plaintiff was based in the forum.  *Precision Craft Log Structures, Inc.*

*v. Cabin Kit Co., Inc.*, 2006 WL 538819, *5-8 (D. Id. Mar. 3, 2006); *see also Brayton Purcell LLP*

*v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1140-1141 (N.D. Cal. 2005) ("[plaintiff] has

satisfied the effects/purposeful direction test by first, making a prima facie showing that [defendant]

willfully infringed copyrights . . . and second, alleging without dispute . . . that [defendant] knew

[plaintiff's] principal place of business was in the [forum]."); *DakColl, Inc. v. Grand Central*

*Graphics, Inc*., 352 F. Supp. 2d 990, 998 (D.N.D. 2005).

Other courts, however, have required more than an allegation of copyright infringement with

evidence that the defendant knew that the plaintiff resided in the forum.  A district court in Maryland

noted that the *Calder* test must be considered in the context of all of a defendant's contacts with the

forum and concluded that jurisdiction was improper.  *Ottenheimer Publishers, Inc. v. Playmore, Inc.,*

158 F. Supp. 2d 649, 653 (D. Md. 2001) (concluding that court lacked personal jurisdiction in

copyright case where contacts alleged included the location of the plaintiff in the forum, the

selection of forum law as the governing law, the receipt of payments for copyrighted material in the

forum, and a website that could be accessed in the forum).

The court, mindful of the persuasive decisions of other courts, concludes that the *Calder*

"effects" test should be used in this copyright infringement case.  The court looks to the contacts

alleged by Illustro, including the fact that IBM Netherlands purchased the software from Neon, a

Texas company, and later communicated with Illustro, also a Texas company.  IBM Netherlands

does not dispute that it knew Illustro and Neon were Texas entities.  Moreover, Illustro has alleged

that IBM Netherlands' infringement was intentional.  Considering these facts in the context of the

*Calder* test, the court concludes that it is not unreasonable to exercise jurisdiction over IBM

Netherlands, because IBM Netherlands could have reasonably foreseen being haled into this court

**Memorandum Opinion and Order – Page 18**

on account of its allegedly intentional copyright infringement.  Accordingly, the court **denies** IBM

Netherlands' motion to dismiss for lack of personal jurisdiction.[2]

### 2.      Sufficiency of Service

IBM Netherlands also moves to dismiss Illustro's complaint for failure to effect service.

Illustro attempted to serve IBM Netherlands by mail, pursuant to the Hague Convention.  Illustro

concedes that such service is not effective in this circuit.  Illustro Resp. at 3.  While the court may

dismiss the claims against IBM Netherlands for insufficient service, this decision is within the

discretion of the court.  *Kreimerman*, 22 F.3d at 645.  Illustro may remedy the defect in service, and

in fact, has requested that the court grant it leave to seek a waiver of service or to otherwise serve

IBM Netherlands.  The 120-day requirement for service after filing a complaint does not apply

because IBM Netherlands is in a foreign country.  *Sang Young Kim v. Frank Mohn A/S*, 909 F. Supp.

474, 479-80 (S.D. Tex. 1995).  Accordingly, the court **denies without prejudice** IBM Netherlands'

motion to dismiss for insufficient service, but grants Illustro time to properly effect service.  Illustro

shall effect service on IBM Netherlands on or before **July 6, 2007**.  If service has not been effected

by this date, IBM Netherlands may re-urge its motion to dismiss pursuant to Rule 12(b)(5).

### B.      IBM's Motion to Dismiss

IBM has moved pursuant to Rule 12(b)(6) to dismiss all of the claims asserted against it by

Illustro: breach of contract, copyright infringement, and unjust enrichment.  The court considers

IBM's arguments with relation to Illustro's claims in turn.

---

[2]Because the court concludes that it has personal jurisdiction over IBM Netherlands, it does not reach Illustro's
argument that jurisdiction is proper pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure.

### 1.      Breach of Contract

Illustro has alleged that IBM breached the 1999 licensing agreement by "copying, installing, distributing, and/or using the Copyrighted Software on unauthorized computers without Illustro's or its predecessors' authority or consent, by failing to pay appropriate upgrade fees."  Compl. ¶ 24. IBM argues that this claim should be dismissed because Illustro has failed to allege any conduct by IBM with regard to the alleged breach.

IBM argues that Illustro's complaint fails to comply with Rule 8 and conflates the actions of IBM and IBM Netherlands.  Illustro responds that the license agreement between IBM and Neon binds IBM and "any related IBM organizations worldwide." Compl. Ex. C, at 1.  Illustro claims that it has alleged that IBM Netherlands upgraded its computers without notifying Illustro, and that IBM had a duty to pay Illustro the appropriate upgrade fees.  Compl. ¶¶ 16-18.

This court has held that while Rule 8 does not require a party to plead the elements of a breach of contract claim in detail,

> Nonetheless, the complaint must describe the alleged terms of the contract in a sufficiently specific manner to give the defendant notice of the nature of the claim. For example, a claim on a written contract must either (1) quote relevant contractual language; (2) include a copy of the contract as an attachment; or (3) summarize the contract's purported legal effect.

*American Realty Trust, Inc. v. Travelers Cas. and Sur. Co. of America*, 362 F. Supp. 2d 744, 753 (N.D. Tex. 2005) (citing 5 Charles Alan Wright & Arthur R. Miller, FED. PRAC. AND PROC. § 1235, at 393)).

The court notes that Illustro has attached a copy of the license agreement to its complaint, and has alleged that the license agreement by IBM bound both IBM and "any related IBM organization worldwide," and that IBM was obligated to pay upgrade fees both for itself and for

other IBM organizations.  Compl. ¶ 15.  The complaint has also alleged that IBM Netherlands transferred the copyrighted software to unauthorized computers and therefore owes Illustro additional upgrade fees.  *Id*. ¶¶ 16-17.  While it is true that the vast majority of Illustro's allegations relates to IBM Netherlands' use of the software in Europe, the court determines that considering the facts in the light most favorable to Illustro, and resolving any inferences in favor of Illustro– such as whether IBM is obligated to pay upgrade fees on behalf of IBM Netherlands – Illustro has stated a claim for breach of contract.  Accordingly, IBM's motion to dismiss the breach of contract claim against it is **denied**.

### 2.    Copyright Infringement

IBM has also moved to dismiss Illustro's claim of copyright infringement against it, arguing that the copyright laws of this country have no extraterritorial effect, and that even if Illustro is alleging a claim of contributory infringement against IBM, because the only alleged infringement occurred outside of the United States, IBM cannot be liable.  Illustro responds that the copyright laws do have an extraterritorial effect, and that even if they do not, IBM is vicariously liable for IBM Netherlands' actions.

While the Fifth Circuit has not squarely addressed the issue, the Ninth Circuit Court of Appeals, sitting en banc, held that there is no extraterritorial effect of the United States copyright laws.  *Subafilms, Ltd. v. MGM-Pathe Commc'n Co.*, 24 F.3d 1088, 1095-1098 (9th Cir. 1994).  That court, faced with an argument like that made by Illustro, held that it was "unwilling to overturn over eighty years of consistent jurisprudence on the extraterritorial reach of the copyright laws without further guidance from Congress."  *Id*. at 1095.  The court also noted, "The undisputed axiom that the United States' copyright laws have no application to extraterritorial infringement predates the

1909 Act." *Id.* (internal citation and quotations omitted).  *See also Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004) ("[F]ederal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States."); *Update Art, Inc. v. Modiin Pub., Ltd.,* 843 F.2d 67, 73 (2d Cir. 1988) ("It is well established that copyright laws generally do not have extraterritorial application.").  Commentators in this field have reached the same conclusion: "*Every* court to have examined the issue has held that Congress did not intend the Copyright Act to be applied extraterritorially, beginning with the Supreme Court in 1908.  Extraterritorial acts of infringement are, therefore, beyond the subject matter jurisdiction of U.S. federal courts."  7 William F. Patry, Patry on Copyright § 25:86 (emphasis in original).

Illustro, however, cites two district court decisions holding that authorization of extraterritorial copyright infringement does amount to copyright infringement.  *Expediters Int'l of Washington, Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468 (D.N.J. 1998); *Curb v. MCA Records, Inc.*, 898 F. Supp. 586 (M.D. Tenn. 1995).  Illustro also argues that the *Subafunds* case relied upon by IBM has been "widely criticized."  Illustro Resp. at 7 n.8.  The court finds that rather it is the cases cited by Illustro that have been widely criticized and its argument is based upon comments in *Curb* and *Expediters*.  One commentator described the courts in *Expediters* and *Curb* as "swept away by a swashbuckling passion to do battle with modern international copyright pirates," and describing the holding in *Curb* as "a breathtaking view of U.S. federal courts' authority and role."  Patry on Copyright § 25:87; *see also Seals v. Compendia Media Group*, 2003 WL 731369, *4 n.3 (N.D. Ill. Feb. 28, 2003) (describing the holdings in *Curb* and *Expediters* as "the distinct minority").

**Memorandum Opinion and Order – Page 22**

The court declines to follow the courts holding the minority view and rather follows the rule that extraterritorial acts of infringement do not violate federal copyright law.  Illustro has alleged that the infringing used of the copyrighted software occurred in "multiple countries including the Netherlands, Germany, and England," but has not alleged a single act of infringement that occurred within the United States.  Compl. ¶ 42.  Similarly, under the holding in *Subafilms*, even if IBM had authorized IBM Netherlands to use the copyrighted software in an infringing manner, because the infringement occurred entirely outside of the United States, Illustro cannot bring a claim of contributory infringement against IBM.  *Subafilms*, 23 F.3d at 1092-1095.  Accordingly, the court **grants** IBM's motion to dismiss the copyright claim against it.[3]

### 3.      Unjust Enrichment

IBM also moves to dismiss Illustro's claim of unjust enrichment, arguing that the claim is preempted by federal copyright law and that the claim is unavailable when brought with a contract claim.  Illustro argues that its unjust enrichment claims survives if the court has determined that the copyright claim has failed, and that it is entitled to bring claims in the alternative.

As discussed above, the court has determined that Illustro's copyright claim fails because the copyright laws have no extraterritorial application.  In this circuit, to find preemption under the Copyright Act, two conditions must be satisfied: "First, the work in which the right is asserted must come within the *subject matter* of copyright as defined in sections 102 and 103.  Second, the right that the author seeks to protect must be *equivalent* to any of the exclusive rights within the general scope of copyright as specified by section 106."  *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d

---

[3]Given the court's conclusion that any alleged infringement occurred outside of the United States and is not the basis for a claim under federal copyright law, the court does not consider the other arguments raised by the parties related to this claim.

**Memorandum Opinion and Order – Page 23**

772, 785-86, *reh'g denied*, 180 F.3d 267 (5th Cir. 1999) (emphasis in original).  Because the court

has determined that Illustro cannot claim protection under the Copyright Act for acts that occurred

outside of the United States, the second prong is not satisfied and its unjust enrichment claim is not

preempted.

Next, IBM argues that Illustro's unjust enrichment claim must be dismissed because New

York law prohibits recovery on this theory where a valid written contract exists.  IBM is correct that

New York law prohibits recovery under a theory of quasi contract for events arising out of the same

subject matter of a valid contract.  *Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 388

(1987).  Illustro responds that its unjust enrichment claim is pleaded in the alternative to its breach

of contract claim.

> Rule 8(e)(2) of the Federal Rules of Procedure provides:
>
> A party may set forth two or more statements of a claim or defense alternately or
> hypothetically, either in one count or defense or in separate counts or defenses. When
> two or more statements are made in the alternative and one of them if made
> independently would be sufficient, the pleading is not made insufficient by the
> insufficiency of one or more of the alternative statements. A party may also state as
> many separate claims or defenses as the party has regardless of consistency and
> whether based on legal, equitable, or maritime grounds. All statements shall be made
> subject to the obligations set forth in Rule 11.

*Id*.  The court first determines that Illustro's pleadings meet the requirements of Rule 8(e)(2), in that

it has pled, alternatively, for unjust enrichment damages under a theory of an implied contract.

Illustro has also sufficiently pled the elements of this claim.  Accepting these allegations are true,

the court finds that Illustro states a cause of action for recovery under a theory of unjust enrichment,

and, if the allegations are proved, Illustro would be entitled to relief as to this claim.  This claim, of

course, would come into play only if Illustro fails to establish its breach of contract claim.

Accordingly, the court **denies** IBM's motion to dismiss the unjust enrichment claim.

**Memorandum Opinion and Order – Page 24**

**IV.     Conclusion**

For the reasons stated herein, the court **grants in part and denies in part** Defendant International Business Machines Corporation's Motion to Dismiss and **denies** Defendant IBM Nederland B.V.'s Motion to Dismiss.  Accordingly, the court **dismisses with prejudice** Illustro's Count Three– Copyright Infringement against Defendant IBM.

**It is so ordered** this 4th day of May, 2007.

Sam A. Lindsay
United States District Judge